KEMBLE SMITH,                                                                                                                                         Plaintiff

v.

WESTLAKE VINYLS, INC.,                                                                        Defendant

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant Westlake Vinyls, Inc.'s Motion to Dismiss. (R. 6). Fully briefed, this matter is ripe for adjudication. For the reasons that follow, the Defendant's Motion to Dismiss, (R. 6), is HEREBY GRANTED.

BACKGROUND

The following background information is taken from Plaintiff Kemble Smith's Complaint and, at this stage of the litigation, treated as fact by the Court.

Smith worked for Westlake Vinyls in the chlorine unit of Westlake's chemical processing plaint in Calvert City, Kentucky as a chemical operator/bulk handler. As a part of his job, Smith was responsible for issuing safe work permits ("SWP") when maintenance or repair work orders were presented to him. Prior to issuing the SWP, the equipment to be repaired or worked on was to be made safe and prepared for maintenance by the chemical operator/bulk handler. This generally included shutting the equipment down or insuring that it was "locked out." Plaintiff alleges that, contrary to Westlake's written policy, it was common practice for one chemical operator/bulk handler to sign the initials of another chemical operator/bulk handler to an SWP if that other chemical operator/bulk handler had "locked out" the equipment.

1

On September 28, 2017 conforming to that common practice, Smith signed the initials of another chemical operator/bulk handler, Dallas Ridenour, to an SWP. After it became clear that Ridenour had not performed the lock out properly on the equipment related to the SWP to which Smith had signed Ridenour's initials, Smith was instructed by his supervisor to properly lock out the piece of equipment in question. The SWP bearing Ridenour's initials was provided to the production superintendent, Ronnie Wright. Wright suspended Smith the next day, and on October 18, 2017 smith was terminated. Dallas Ridenour was not terminated.

When Smith was terminated, he was a member of the International Association of Machinists and Aerospace Workers, AFL-CIO, and Local Lodge No. 2781 ("Union"). The Union and Westlake had in place a collective bargaining agreement ("CBA") spanning from November 1, 2014 to October 31, 2019.

On November 28, 2018, Plaintiff file the instant lawsuit against Westlake. Smith's Complaint contains three Counts: I – Violation of KRS § 336.130, II – Violation of Collective Bargaining Agreement, and III – Punitive Damages. Under Count I, Smith alleges that Westlake "by and through its employees, agents, and representatives, terminated Plaintiff's employment based on personal grievances stemming from the hostile and intimidating work environment created by the Defendant's employees, agents, and representatives, and such actions of Defendant were wrongful, intentional, willful, deliberate, knowing, and malicious, and are contrary to the fundamental and well-defined policy as evidenced in KRS § 336. 130." Next, Under Count II, Smith claims that "to the extent Plaintiff's state law-based claims in Count I are found by the Court to be preempted by application of § 301 of the Labor Management Relations Act ("LMRA"), 1947, 29 U.S.C. § 185, Plaintiff alleges that Defendant's termination of Plaintiff's employment was in violation of the CBA referenced herein." Smith goes on to assert

that "Plaintiff suffered damages for which reference to the subject CBA is required to determine the amount thereof to which Plaintiff is entitled as a direct and proximate result of Defendant's wrongful termination of Plaintiff's employment." Finally, under Count III, Smith claims that his wrongful termination warrants the imposition of punitive damages against Westlake. Westlake now moves to dismiss Smith's Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6).

STANDARD

   A. Motion to Dismiss Pursuant 12(b)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a challenge to the factual basis, however, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). Therefore, while, "when a Rule 12(b)(6) motion is

converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; . . . on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes." *Id.* (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

   B.  Motion to Dismiss Pursuant to Rule 12(b)(6).

The 12(b)(6) standard for failure to state a claim on which relief can be granted "governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). Under that standard, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

When applying the Rule 12(b)(6) standard, the court must presume all of the factual allegations in the complaint are true. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual

4

inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may dismiss the case "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79). "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Otworth v. Budnik*, 594 F. App'x 859, 861 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted)).

Under the 12(b)(6) standard, the Court may consider "exhibits attached [to the complaint] . . so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" for the purpose of a 12(b)(6) motion to dismiss. *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999). When a document is mentioned in the complaint and is a necessary part of the plaintiffs claim, the defendant may submit a copy of the document to the court attached to a motion to dismiss. *Id.* The motion to dismiss does not need to be converted to a motion for summary judgment when a document central to the complaint is attached to the motion to dismiss. *Id.*

DISCUSSION

Westlake moves to dismiss each of Smith's claims based on various arguments. The Court will move claim by claim, addressing each of Westlake's arguments in turn.

A. Count I – Violation of KRS § 336.130

Westlake argues that Smith's wrongful termination in violation of KRS § 336.130 claim should be dismissed for three reasons. *First*, Smith's Complaint contains nothing more than vague allegations, which fail to state a claim under the Iqbal/Twombly standard and fall outside KRS § 336.130's scope. *Second*, even if Smith has stated a claim under KRS § 336.130, that claim is preempted by Sections 7 and 8 of the National Labor Relations Act ("NLRA"). *Third*, if Smith's claim is not preempted by the NLRA, to the extent Smith's claim depends on interpreting the CBA, it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). The Court will address Westlake's arguments in the order they have been made.

1) Smith States a Claim Under KRS § 336.130.

Westlake argues that Smith's vague allegations do not pass muster under the Iqbal/Twombly standard and fail to state a wrongful termination claim pursuant to KRS § 336.130 because they do not allege that Smith was prohibited from organizing, collectively bargaining, striking, or picketing, nor do they allege that he was subjected to violence, intimidation, threats or coercion in the exercise of such activities. Smith responds arguing that the Iqbal/Twombly standard does not apply here and that his Complaint indeed contains factual allegations sufficient to state a wrongful termination claim under KRS § 336.130. Smith cites two sections of his Complaint that he believes state a viable wrongful termination claim under KRS § 336.130—Paragraphs 21 and 22. Those paragraphs read as follows:

> **21.** During Plaintiff's term of employment with Defendant, and in particular during the term of the CBA referenced herein, Defendant, by and through its employees, agents, and

> representatives, created a hostile intimidating, and threatening work environment for Plaintiff and subjected Plaintiff to continuous and repeated threats of termination despite Plaintiff's 27-year work history with no reprimands, suspensions, or prior terminations.
>
> **22.** That Defendant, by and through its employees, agents, and representatives, terminated Plaintiff's employment based on personal grievances stemming from the hostile and intimidating work environment created by Defendant's employees, agents, and representatives, and such actions of Defendant were wrongful, intentional, willful, deliberate, knowing, and malicious, and are contrary to the fundamental and well-defined public policy as evidenced in KRS § 336.130.

(R. 1). While the Court agrees that Smith's Complaint is in large part vague allegations and conclusory statements, based on Paragraph 22, the Court finds that Smith has done the bare minimum so as to establish a wrongful termination claim pursuant to KRS § 336.130.

As an initial matter, the Court notes that contrary to Smith's suggestion, the Iqbal/Twombly standard is unequivocally just as applicable here as it is to every civil case filed within the federal court system. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 n.4 (6th Cir. 2009) ("The Supreme Court has recently clarified that its decision in Twombly "expounded the pleading standard for 'all civil actions,'" despite the fact that Twombly itself arose in the context of an antitrust suit." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009))). As such, while Smith "need not plead with such specificity as to indicate each and every instance where his employer, by and through its employees, agents, and representatives, created a hostile and intimidating work environment," (R. 12), he certainly needs to tender to the Court more than "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). With this in mind, the Court moves to Smith's wrongful termination claim.

Kentucky allows "an employer [to] discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citing *Prod. Oil Co.*

7

*v. Johnson*, 313 S.W.2d 411 (Ky. 1958)); *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky. Ct. App. 1977)). But to that general rule, Kentucky recognizes a limited exception for terminations against public policy. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985); *accord Hall v. Consol of Ky. Inc.*, 162 F. App'x 587, 589-90 (6th Cir. 2006). The exception is narrow: The employee's discharge must be "contrary to a fundamental and well-defined public policy as . . . evidenced by a constitutional or statutory provision." *Grzyb*, 700 S.W.2d at 401.

Here, Smith claims that his termination violated KRS § 336.130. KRS § 336.130 reads in pertinent part:

> (1) Employees may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare. Employees, collectively and individually, may strike, engage in peaceful picketing, and assemble collectively for peaceful purposes. . . .
>
> (2) Neither employers or their agents nor employees or associations, organizations or groups of employees shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion.

The Court agrees with Westlake that, at first blush, the vague allegations in Smith's Complaint appear to fall outside KRS § 336.130's scope. As Westlake points out, Smith's Complaint makes no mention of Smith being prohibited from striking, picketing, or organizing for concerted activity of any kind. However, upon closer scrutiny, the Court finds that Smith's allegation that he was fired for filling personal grievances likely falls within the intended scope of KRS § 336.130.

As Westlake properly states, KRS § 336.130 parallels Sections 7 and 8 of the NLRA. *See Salter v. Active Transp. Co.*, No. CIV.A. 398CV00506H, 1998 WL 34077713, at *4 (W.D. Ky. Nov. 16, 1998). Similar to KRS § 336.130, Sections 7 and 8 give employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through

8

representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining," and prohibit employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in section 7," and from "dominat[ing] or interfer[ing] with the formation or administration of any labor organization."

It is well settled law that engaging in the grievance process constitutes concerted union activity that is safeguarded by Sections 7's and 8's respective protections and prohibitions. *See OPW Fueling Components v. N.L.R.B.*, 443 F.3d 490, 496 (6th Cir. 2006); *Jackson v. Teamsters Local Union* 922, 991 F. Supp. 2d 71, 79 (D.D.C. 2014); *Broadbent v. Elliot-Lewis Corp.*, No. 1:07 CV 0314, 2007 U.S. Dist. LEXIS 67051, at *12 (N.D. Ohio Sep. 11, 2007). As Justice Brennan has persuasively reasoned, "it would make little sense for § 7 to cover an employee's conduct while negotiating a collective-bargaining agreement, including a grievance mechanism by which to protect the rights created by the agreement, but not to cover an employee's attempt to utilize that mechanism to enforce the agreement." *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 836, 104 S. Ct. 1505, 1513 (1984).

The Court finds that it would be just as nonsensical for KRS § 336.130—which parallels the protections provided to employees in Sections 7's and 8's of the NLRA—not to protect an employee's attempt to utilize the grievance process. If Sections 7 and 8 respective protections and prohibitions serve to safeguard an employee's right to utilize the grievance process, so must their state law parallel, KRS § 336.130. Thus, by alleging that he was terminated in retaliation for filing grievances, the Court finds that Smith has indeed stated factual allegations which give rise to a wrongful termination claim under KRS § 360.130.

2) Smith's KRS § 336.130 Claim is Preempted by the NLRA.

Relying on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959) and this Courts holding in *Smith v. Excel Maintenance Services*, 617 F. Supp. 2d 520 (W.D. Ky. 2008), Westlake argues that to the extent Smith may state a KRS § 360.130 claim, any such claim is preempted by the NLRA. Smith responds, arguing that according to *United Automobile, Aerospace & Agricultural Implement Workers of America Local 3047 v. Hardin County., Kentucky.*, 842 F.3d 407 (6th Cir. 2016), "NLRA preemption of laws regulating union-security agreements has not been fully concretized." (R. 12 (quoting *Id.* at 412)). The Court finds that while some aspects of NLRA preemption may not be "fully concretized," this does not save Smith's claim.

In *Garmon*, the Supreme Court held that when an activity is protected under § 7 or prohibited under § 8 of the NLRA, or even arguably protected or prohibited, both the States and the federal courts "must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. This holding has become known as the *Garmon* rule, or *Garmon* preemption. "The *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286, 106 S. Ct. 1057, 89 L. Ed. 2d 223 (1986).

This Court applied the *Garmon* rule in *Smith v. Excel Maintenance Services*, 617 F. Supp. 2d 520 (W.D. Ky. 2008). In *Excel Maintenance Services* the plaintiff brought a wrongful termination claim against the defendant pursuant to KRS § 336.130, alleging that he was

terminated in retaliation for orchestrating a meeting between the employees and the defendant at which conditions of employment and issues affecting job performance were negotiated. The Court held that the plaintiff's conduct and resulting termination were respectively protected under Section 7 and prohibited under Section 8 of the NLRA. Consequently, the *Garmon* rule applied so as to preempt KRS § 336.130, thereby stripping the Court of its jurisdiction to hear the plaintiff's retaliatory termination claim.

This case is analogous to *Excel Maintenance Services*. Just like the plaintiff in *Excel Maintenance Services*, Smith has brought a claim based on conduct protected by Section 7 of the NLRA (utilizing the grievance process) and resulting retaliation prohibited by Section 8 of the NLRA (wrongful termination for engaging in conduct protected by Section 7). Thus, just like *Excel Maintenance Services*, the *Garmon* rule applies here, demanding that the Court dismiss Smith's wrongful termination claim because the National Labor Relations Board has proper jurisdiction over that claim—not this Court.

With that being said, the Court is well aware that the *Garmon* rule is not universally applicable. There are exceptions to the *Garmon* rule: "(1) where Congress has affirmatively indicated that judicial power should exist; (2) where the Court cannot presume Congress meant to 'intrude so deeply into areas traditionally left to local law'; and (3) where the law is so structured 'that judicial supervision will not disserve the interests promoted by the federal labor statutes.'" *McGlone v. Cintas Corp.*, NO. 93-6062, 1994 U.S. App. LEXIS 24588, at *7 (6th Cir. Sep. 8, 1994) (quoting *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971)). However, Smith does not argue that any of these exceptions apply here.

Instead, without explanation as to how it applies, Smith cites *United Automobile, Aerospace & Agricultural Implement Workers of America Local 3047 v. Hardin County.*,

*Kentucky.*, 842 F.3d 407 (6th Cir. 2016) for the proposition that "preemption under the NLRA is not as clear as Westlake would like this Court to believe." (R. 12). But *United Automobile* was concerned with whether the term "state" in Section 14(b) of the NLRA included counties. *See id.* The Court fails to see how that relates to the case sub judice. And while *United Automobile* indeed makes clear that some aspects of NLRA preemption are not "concretized," as Westlake points out, the rule demanding that the court cede jurisdiction to the National Labor Relations Baord when the conduct at issue is even arguably protected or prohibited by Sections 7 and 8 of the NLRA has been set in stone for some sixty years. *See Garmon*, 359 U.S. 236.

Thus, the Court finds that Smith's wrongful termination claim in violation of KRS § 336.130 is preempted by the NLRA. Consequently, this Court has no jurisdiction over that claim. The Court need not proceed to Westlake's argument that Count I is also preempted by Section 301 of the LMRA. Westlake's motion to dismiss Count I of Smith's Complaint for lack of jurisdiction is granted. Because there are no additional facts that Smith could plead that would grant the Court jurisdiction of his KRS § 336.130 claim, that claim is dismissed with prejudice. *See DBI Investments, LLC v. Blavin*, 617 F. App'x 374, 385 (6th Cir. 2015) ("[A] complaint may be dismissed without leave to amend where the amendment would be futile." (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir.2002))).

B.  Smith Fails to State a Claim for Violation of the CBA.

Smith brings a claim against Westlake for violation of the CBA pursuant to Section 301 of the LMRA. Westlake moves for dismissal of that claim for two reasons. *First*, Smith has failed to sufficiently allege which provision of the CBA Westlake violated or how they violated that provision by terminating him. *Second*, Smith failed to allege that he exhausted the grievance process prior to filing suit. In response, Westlake argues that it need not plead with the level of

specificity suggested by Westlake and that if the Court accepts Westlake's argument, "it would essentially require every plaintiff to plead with a level of specificity that is not required in federal court complaints." (R.12). The Court disagrees.

"It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Young v. Int'l Union, UAW, Local 651*, 148 F. Supp. 3d 602, 616 (E.D. Mich. 2015) (quoting *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 U.S. App. LEXIS 26601 (6th Cir. Oct. 19, 1999)); see also *Northampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed. Appx. 518, 522 (6th Cir. 2012). Furthermore, the Court is not required to accept as true legal conclusions asserted in the Complaint. *Iqbal*, 556 U.S. at 678. The bare bones statement that a defendant breached a contract, unaccompanied by any other support or factual allegation, is simply not enough to survive a motion to dismiss. *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 495 (6th Cir. 2019) (holding that a plaintiff cannot establish a breach of contract claim by simply claiming a defendant breached the contract by breaching the contract).

Here, Smith fails to identify which CBA provision Westlake violated or how Smith's termination violated that CBA provision. Instead, Smith's Complaint states—without further explanation, facts, or reference to a specific CBA provision—the vague legal conclusion that his termination breached the CBA's terms. Such a Complaint does not rise beyond the bar set by Iqbal/Twombly, which is indeed applicable here, despite Smith's assertions otherwise. As such, the Court need not address Westlake's exhaustion argument. Westlake's motion to dismiss Smith's claim against it for violating the CBA is granted. Count II is dismissed. Because Smith might cure the deficiencies upon which the dismissal is predicated by the including additional factual allegations, the Court's dismissal of this claim is without prejudice.

C. Smith's Punitive Damages Claim Cannot Stand Alone.

Smith pleads punitive damages as a standalone claim. This is improper. "[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (citing *Toon v. City of Hopkinsville*, 2011 U.S. Dist. LEXIS 40830, 2011 WL 1560590, at *3 (W.D. Ky. April 14, 2011) (citing *Salisbury v. Purdue Pharma*, L.P., 166 F. Supp. 2d 546, 548, n. 1 (E.D. Ky. 2001))). As all of Smith's claims have been dismissed, his claim for punitive damages has nothing on which to attach itself and must also be dismissed. Should Smith choose to refile his claim for violation of the CBA pursuant to Section 301 of the LMRA, he is free to at that time to claim punitive damages as a potential remedy.

CONCLUSION

For the forgoing reasons, and the Court being otherwise sufficiently advised, Defendant Westlake Vinyls, Inc.'s Motion to Dismiss, (R. 6), is **HEREBY GRANTED**. The Court **ORDERS** as follows:

1) Count I – Violation of KRS § 336.130 is dismissed with prejudice.
2) Count II – Violation of Collective Bargaining Agreement is dismissed with leave to refile.
3) Count III – Punitive Damages is not a standalone cause of action and is dismissed. Should Smith elect to refile his claim against Westlake for violation of the CBA, he free to plead punitive damages as a potential remedy at that time.

The Court will enter a separate Judgment consistent with this Memorandum Opinion & Order.

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court
July 24, 2019

cc. counsel